UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN NGUYEN, individually and on behalf of other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MARKETSOURCE, INC. (aka MARKETSOURCE, INC., which will do business in California as Maryland MARKETSOURCE, ICN.), a Maryland corporation, et al.,<br><br>Defendants. | Case No.: 17-cv-02063-AJB-JLB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO STAY PROCEEDINGS**<br><br>(Doc. No. 10) |

Presently before the Court is MarketSource, Inc.'s ("Defendant") motion to compel individual arbitration and to dismiss class claims, or, in the alternative, to stay proceedings pending a Supreme Court decision. (Doc. No. 10.) Plaintiff opposes the motion. (Doc. No. 14.) Having reviewed the parties' arguments and controlling legal authority, and pursuant to Civil Local Rule 7.1.d.1, the Court finds the matter suitable for decision on the papers and without oral argument. For the reasons set forth below, the Court **GRANTS** Defendant's motion to stay all proceedings in the instant case.

///

///

1

## BACKGROUND

Plaintiff, Kevin Nguyen, was employed by Defendant as a Technology Sales Specialist from May 22, 2016, through approximately April 5, 2017. (Doc. No. 1-2 ¶ 6.) As a Sales Specialist, Plaintiff was paid an hourly rate to travel to various worksites to promote Defendant's products. (*Id.*) In this present matter, Plaintiff was assigned to promote HP branded products, distribute promotional items, and answer questions from store employees and customers. (*Id.*) In sum, Plaintiff alleges that while he was employed by Defendant he was not provided mileage reimbursement when driving between work sites, was required to use his own personal cellular telephone, and that he earned certain monetary "bonuses" that were not factored into the regular rate of pay calculation for purposes of determining his overtime wage rate for time worked. (*Id.* ¶¶ 7–9.)

Prior to his employment, on May 14, 2016, Plaintiff electronically signed a mutual arbitration agreement with Defendant that states that:

> all disputes, claims, complaints, or controversies ("Claims") that I may have against MarketSource and/or any of its subsidiaries, affiliates, officers, directors, employees, agents, and/or any of its clients or customers (collectively and individually the "Company"), or that the Company may have against me, including . . . claims for wages, compensation, penalties or restitution . . . are subject to confidential arbitration pursuant to the terms of this Agreement and will be resolved by Arbitration and NOT by a court or jury.

(Doc. No. 10-11 at 2.) This same document also states that: "No Covered Claims may be initiated or maintained on a class action, collective action, or representative action basis either in court or arbitration[.]" (*Id.*)

Moreover, Plaintiff's "Consent and Notice Regarding Electronic Signature Form" states:

> Electronic Signature Agreement. By checking this box and clicking the next screen, I agree that the form that I am submitting is correct and I am signing this document electronically . . . I consent to be legally bound by the terms, conditions and policies

> contained in these documents and agree to be bound as though I had signed these documents in writing . . . By affixing my E-Signature to a document, I agree to be bound by the terms and conditions of the document.

(Doc. No. 10-10 at 2.)

Plaintiff first filed his complaint in Superior Court on October 6, 2017, alleging causes of action for (1) failure to pay straight-time and overtime wages; (2) violation of the unfair competition law; (3) failure to reimburse required expenses; (4) failure to pay all wages upon termination; and (5) failure to provide accurate wage statements. (Doc. No. 1-2 at 4.) This case was then removed on October 6, 2017. (Doc. No. 1.)

## LEGAL STANDARDS

### I. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") governs the enforcement of arbitration agreements involving interstate commerce. 9 U.S.C. § 2. Under § 2 of the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* The FAA permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in [the] agreement." *Id.* at § 4.

While generally applicable defenses to contract, such as fraud, duress, or unconscionability, may invalidate arbitration agreements, the FAA preempts state law defenses that apply only to arbitration or that "derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Moreover, there is generally a strong policy favoring arbitration, which requires any doubts to be resolved in favor of the party moving to compel arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). However, where a party challenges the existence of an arbitration agreement, "the presumption in favor of

arbitrability does not apply." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014).

## II. Motion to Stay

A court's power to stay proceedings is incidental to the inherent power to control the disposition of its cases in the interests of efficiency and fairness to the court, counsel, and litigants. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). A stay may be granted pending the outcome of other legal proceedings related to the case in the interests of judicial economy. *See Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979). Discretion to stay a case is appropriately exercised when the resolution of another matter will have a direct impact on the issues before the court, thereby substantially simplifying the issues presented. *See Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983).

In determining whether a stay is appropriate, a district court "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55. "[I]f there is even a fair possibility that the stay . . . will work damage to some one else, the stay may be inappropriate absent a showing by the moving party of hardship or inequity." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (citation and internal quotation marks omitted). "A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva*, 593 F.2d at 864.

## DISCUSSION

## I. Defendant's Request for Judicial Notice

The Court may judicially notice an adjudicative fact that "is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

### A. Request for Judicial Notice: Exhibits A and B

First, Defendant asks the Court to take judicial notice of the JAMS Employment

4

Arbitration Rules & Procedures and JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness. (Doc. No. 10-2 at 2.) Plaintiff does not oppose this request. (*See generally* Doc. No. 14.) Thus, as these rules and procedures are not subject to reasonable dispute and other courts commonly grant judicial notice of JAMS rules, Defendant's request as to exhibits A and B is **GRANTED**. *E.g.*, *O'Connor v. Uber Techs., Inc.*, 150 F. Supp. 3d 1095, 1098 n.2 (N.D. Cal. 2015) (granting judicial notice of JAMS rules and acknowledging that other District Courts have done the same).

**B. Request for Judicial Notice: Exhibit C**

Second, Defendant asks the Court to take judicial notice of the United States Supreme Court's online docket entry for *Ernst & Young, LLP v. Morris*, Case 16-300. (Doc. No. 10-2 at 2.) Plaintiff did not oppose this request or dispute the authenticity of these documents. (*See generally* Doc. No. 14.)

The Court notes that courts routinely grant judicial notice of court records and public records. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of briefs, transcripts, pleadings, memoranda, expert reports, among other documents, that were filed in another suit). Though, a court may not take judicial notice of the truth of the contents of the documents. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001). Accordingly, Defendant's request for judicial notice of exhibit C is **GRANTED** for the limited purpose stated above. *See Johnson & Johnson v. Superior Court*, 192 Cal. App. 4th 757, 768 (2011) ("[W]e may take judicial notice of the existence of judicial opinions, court documents, and verdicts reached, we cannot take judicial notice of the truth of hearsay statements in other decision or court files or of the truth of factual findings made in another action.") (internal citations omitted).

**C. Request for Judicial Notice: Exhibits D and E**

Finally, attached to Defendant's reply brief are additional requests for judicial notice of Hewlett-Packard's form 10-K annual report for the fiscal year ending October 31, 2014, and an excerpt of Hewlett-Packard's Global Citizenship Report for the fiscal year ending October 31, 2011. (Doc. No. 16-3 at 2.) While Plaintiff does not challenge the authenticity

5

of the documents, the Court finds the two Hewlett Packard documents irrelevant to the present matter. In fact, Defendant's reply brief does not even mention these two documents. Thus, at this stage of the proceedings, as the two exhibits are irrelevant to any controversy the Court must resolve and the documents cannot be judicially noticed or incorporated by reference, judicial notice of exhibits D and E is **DENIED**. *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1026 (C.D. Cal. 2015) (declining to take judicial notice of several exhibits finding that they were irrelevant to the matter).

## II. Both Parties' Evidentiary Objections

Another threshold matter before the Court is both Plaintiff and Defendant's evidentiary objections. (Doc. Nos. 15, 16-1.)

Plaintiff filed the following evidentiary objections as a separate document: (1) those supporting striking of entire declarations and exhibits under Rule 37 based upon Defendant's failure to satisfy its obligations under Rule 26(a); (2) a summary of the legal grounds for objections to specific language in declarations; and (3) specific objections to the declarations submitted by Mr. Peter Lozzi and Ms. Eva Billie. (Doc. No. 15 at 2.)

Defendant opposes the objections arguing that the objections are untimely and are thus waived. (Doc. No. 16-2 at 2–3.) Additionally, Defendant asserts that there is no basis to strike the declaration of Eva Billie. (*Id.* at 3–6.)

Defendant is correct that Plaintiff's evidentiary objections were filed on November 21, 2017, a day after his opposition brief was due according to the Court's briefing schedule. (Doc. Nos. 11, 15.) The Court notes that a single day delay is negligible. Nevertheless, courts in this district have found it appropriate as well reasonable to strike late filed evidentiary objections. *See Elliot v. Spherion Pac. Work, LLC*, 368 F. App'x 761, 763 (9th Cir. 2010) (holding that the court did not abuse its discretion "in following the local rules and refusing to consider [untimely filed] evidentiary objections . . . ."); *see also Traylor v. Pyramid Services, Inc.*, No. CV 07 4376 R(SSx), 2008 WL 8667410, at *2 (C.D. Cal. Sept. 24, 2008) (denying the plaintiffs' evidentiary objections as they were filed late and thus violated the timelines mandated by the local rules); *Rosen v. Cross*, CV 12-2376

6

ABC (FMOx), 2013 WL 12130250, at *1 n.2 (C.D. Cal. May 21, 2013) (refusing to consider the untimely filed evidentiary objections stating that "[i]f [the] Defendant wanted to have these evidentiary objections considered, they should have been filed with the opposition papers . . . ."); *Cybersitter, LLC v. People's Republic of China*, No. CV 10-38-JST (SHx), 2010 WL 4909958, at *4 n.5 (C.D. Cal. Nov. 18, 2010) ("The Court need not consider untimely filed objections.").

Moreover, the Court notes that pursuant to its Civil Case Procedures, "[o]bjections relating to the motion should be set forth in the parties' opposition or reply. No separate statement of objections will be allowed." Civ. Case. Proc. II.B.[1] Additionally, Civil Local Rule 7.1 clearly states that "[i]f an opposing party fails to file the papers in the manner required by Civil Local Rule 7.1.e.2, that failure may constitute a consent to the granting of a motion or other request for ruling by the court." CivLR 7.1.f.3.c.

Thus, taking all of this into consideration, the Court declines to rule on Plaintiff's evidentiary objections.

For similar reasons, the Court also denies Defendant's evidentiary objections, which total twelve pages in length in addition to its eleven page reply brief. (Doc. No. 16-1.) Not only are the evidentiary objections not set forth in his reply brief, but courts routinely hold that new evidence or arguments may not be filed in a reply memorandum unless the other party is given a chance to respond. *See Thompson v. C.I.R.*, 631 F.2d 642, 649 (9th Cir. 1980) (illuminating that the Ninth Circuit has held that parties "cannot raise a new issue for the first time in their reply briefs."); *see also Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (explaining that where new evidence is presented in a reply, the district court should either not consider the new evidence, or not consider it without giving the other party the opportunity to respond).

---

[1] The Court notes that it does not believe that Plaintiff submitted its evidentiary objections in a separate document in an attempt to avoid the page limits for its opposition brief, as the brief and objections total only nineteen pages.

In sum, the Court **DENIES** both Plaintiff and Defendant's evidentiary objections based on their various procedural deficiencies, noncompliance with the Local Rules of this District, and failure to follow this Court's Civil Case Procedures.[2] (Doc. Nos. 15, 16-1.)

### III. Defendant's Motion to Compel Arbitration

Defendant asserts that the Court should compel Plaintiff to honor his mutual agreement to arbitrate his individual claims. (Doc. No. 10-1 at 14–23.) In opposition, Plaintiff argues that the arbitration agreement is "illegal" as he was not provided a meaningful opportunity to opt-out of the agreement. (Doc. No. 14 at 6–13.) Thus, there is no reason to compel this case to go to arbitration. (*Id.*)

Given the liberal federal policy favoring arbitration, the FAA "mandates that district courts [must] direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citation omitted). Thus, in a motion to compel arbitration, the district court's role is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n*, 673 F.3d 947, 955–56 (9th Cir. 2012) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). If these factors are met, the court must enforce the arbitration agreement in accordance with its precise terms. *Id.* at 955 (citation omitted).

The Court notes that both parties do not dispute that the FAA governs the parties' mutual arbitration agreement. (Doc. No. 10-1 at 16; Doc. No. 14.) Instead, the parties argue the merits of *Morris v. Ernst & Young LLP*, 834 F.3d 975 (9th Cir. 2016). (Doc. No. 10-1 at 21–23; Doc. No. 14 at 6–11.) Defendant claims that any of Plaintiff's arguments premised on *Morris* are meritless as Plaintiff was not required to enter into an arbitration

---

[2] The Court notes that to the extent that it does not rely on most of the evidence under Plaintiff and Defendant's objections, the objections are largely moot. *See Humphreys & Assocs., Inc. v. Cressman*, No. SACV 15-0782 AG (RNBx), 2015 WL 12698428, at *2 (C.D. Cal. Aug. 31, 2015).

8

agreement as a condition of his employment. (Doc. No. 10-1 at 22.) Plaintiff contends that the contract in this case and the one in *Morris* contain the same unenforceable restrictions prohibiting employees from maintaining any class action. (Doc. No. 14 at 8.) Moreover, Plaintiff asserts that he had no meaningful opportunity to opt-out of the class action waiver as he was forced to sign the agreement as a condition of his employment. (*Id.* at 8–9.) Specifically, Plaintiff argues that the mutual arbitration agreement was self-enforcing, regardless of whether Plaintiff signed it or was even aware of it. (*Id.* at 9.)

The issue in *Morris* was "whether an employer violates the National Labor Relations Act ["NLRA"] by requiring employees to sign an agreement precluding them from bringing, in any forum, a concerted legal claim regarding wages, hours, and terms and conditions of employment." *Morris*, 834 F.3d at 979. Similar to the allegations in the present matter, the arbitration agreement in *Morris* was imposed on the plaintiff as a condition of employment. (*Id.* (Doc. No. 14 at 8–9).) The plaintiff then filed suit despite the existence of a class action waiver in the arbitration agreement, claiming that the waiver was rendered illegal by the NLRA, and thus sought to avoid individual arbitration and instead proceed in federal court as a class. *Id.* On January 13, 2017, the Supreme Court granted certiorari in *Morris* to resolve the circuit split that had developed and heard oral argument on October 2, 2017—*Ernst & Young, LLP v. Morris*, 137 S. Ct. 809 (Mem) (2017).

Defendant argues that rather than *Morris* governing, *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072 (9th Cir. 2014) controls. (Doc. No. 10-1 at 22.) Defendant is mistaken given the facts in *Johnmohammadi*. In *Johnmohammadi*, the plaintiff had a right to opt-out of the arbitration agreement if she chose to within a 30–day period. *Id.* at 1074. When the plaintiff did not opt-out within this time period, "she became bound by the terms of the arbitration agreement." *Id.* This differs from the allegations at bar, where Defendant purportedly did not give Plaintiff an option to opt-out of the agreement. (*See generally* Doc. No. 14.) Therefore, *Johnmohammadi* is not relevant to this Court's analysis or decision.

Consequently, bearing in mind the parties' focus on *Morris*, it is clear that the instant matter turns on whether an employment agreement requiring an employee and employer to resolve employment disputes through individual arbitration is enforceable under the FAA. Thus, this matter falls squarely under *Morris* with the Supreme Court addressing the circuit split on this exact issue in the near future.

With this framework in mind, the Court thus turns to the *Landis* factors to determine whether a stay of this case pending the Supreme Court's resolution of *Morris* is justified. *See Robledo v. Randstad US, L.P.*, No. 17-cv-01003-BLF, 2017 WL 4934205, at *2–3 (N.D. Cal. Nov. 1, 2017) (declining to analyze the defendant's motion to compel arbitration as the issues present in the motion fell within the boundaries of *Morris* and thus the court focused its analysis on the defendant's motion to stay).

### IV. A Stay is Warranted

Defendant argues that this proceeding should be stayed pending the Supreme Court's ruling in *Morris*. (Doc. No. 10-1 at 23–32.) Plaintiff argues that a stay is not proper and urges reliance on the Ninth Circuit's opinion in *Morris*.[3] (Doc. No. 14 at 13–14.) The Court

---

[3] Plaintiff also asserts that this case falls squarely within the application of *Echevarria v. Aerotek, Inc.*, No. 16-cv-04041-BLF, 2017 WL 24877 (N.D. Cal. Jan. 3, 2017), where the court denied the defendant's motion to stay pending *Morris*. (Doc. No. 14 at 10.) However, as explained by the court in *Robledo*, 2017 WL 4934205, at *5:

> At the time this court considered Aerotek's motion, the Supreme Court had not yet granted the petition for certiorari in *Morris*. The possibility that the Supreme Court would grant cert and ultimately resolve the case on the merits was entirely speculative at that time, and the hypothetical resolution was at least one year away . . . Aerotek appealed this Court's denial of its motion to compel arbitration, and the Ninth Circuit stayed the action pending the Supreme Court's resolution of *Morris*. This Court then granted Aerotek's motion to stay all proceedings in the district court pending appeal, reasoning that whether the plaintiff "may proceed with his class claims in this action turns squarely on the outcome of the Supreme Court's review of *Morris*.

Thus, the Court disagrees with Plaintiff and finds *Echevarria* inapposite.

notes that Plaintiff's Reply brief does not adequately address the *Landis* factors, but instead resorts to citing to cases that have denied a stay pending *Morris*. (*Id.* at 13.)

In determining whether to grant a stay, "the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). "Among these competing interests are [1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id*. These factors are drawn from the Supreme Court's decision in *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). If there is "even a fair possibility" of harm to the opposing party, the moving party "must make out a clear case of hardship or inequity in being required to go forward[.]" *Id.* at 255. Overall, the "proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citation omitted).

After considering the various competing interests, this Court finds that a stay is warranted pending the Supreme Court's ruling in *Morris*. Presently, the Court notes that the possible prejudice or harm to Plaintiff from granting a stay under these circumstances is slight. First, Plaintiff seeks monetary damages in the form of unpaid wages and reimbursements and will therefore not be unduly prejudiced or harmed by a delay in receiving monetary relief. (Doc. No. 1-2 at 18–19 (*see Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (holding that monetary recovery cannot serve as a foundation for the denial of a stay)). Additionally, as the decision from the Supreme Court in this matter is anticipated sometime this year, "a stay to accommodate that decision would not be open-ended and will likely be relatively short." *Cook v. Rent-A-Center, Inc.*, No. 2:17-cv-00048-MCE-EFB, 2017 WL 4270203, at *4 (E.D. Cal. Sept. 26, 2017).

In contrast, Defendant has identified concrete harms it will suffer if the stay is denied and this action proceeds. Defendant argues that if this case were to move forward, it would have to engage in collective and class action discovery, which would be a waste of time

11

and resources pending the outcome of *Morris*. (Doc. No. 10-1 at 26.) Moreover, Defendant states that if the Court were to deny its motion to compel individual arbitration based on *Morris*, it would appeal such a decision. (*Id.*)

For reasons that the court in *Cook*, 2017 WL 4270203, at *4 so clearly and articulately stated, the Court finds that this factor weighs in favor of granting a stay. In relevant part, the *Cook* court held that:

> Requiring the parties to go forward with litigation given the uncertainty in this regard would waste the time and resources of both the parties and the Court. Engaging in collective and class action discovery, not to mention handling disputes over conditional certification, potential class members, and the merits of the collective/class action allegations themselves, will require substantial effort on the part of all concerned, efforts that may well be unnecessary depending on the Supreme Court's ultimate decision in <u>Morris</u>. Additionally, by forcing [the defendant] to litigate this matter while the class waiver issue is pending before the Supreme Court, would effectively deprive [it] of its right under the [FAA] to enforce its Arbitration Agreement as written.

*Id.* (emphasis in original).

Finally, judicial economy clearly warrants a stay pending *Morris*. It is without question that *Morris* will have an imperative impact on this case and will also simplify the issues before the Court. For instance, if the Supreme Court reverses *Morris* and sides with the majority of circuit courts who have upheld class action waivers in arbitration agreements, then Defendant has a likelihood of prevailing on its motion to compel arbitration. Thus, this factor weighs in favor of granting the stay. *See McElrath v. Uber Techs., Inc.*, No. 16-cv-07241-JSC, 2017 WL 1175591, at *6 (N.D. Cal. Mar. 30, 2017) ("While any estimate regarding when the Supreme Court will issue its *Morris* opinion is necessarily somewhat speculative, two factors are concrete: this case is in its early stages, and the outcome of *Morris* will have a significant impact on this case. Thus, this factor weighs slightly in favor of a stay."); *see also Robledo*, 2017 WL 4934205, at *4 ("This factor clearly weighs in favor of granting a stay because the decision in *Morris* could be

dispositive of whether Plaintiffs' claims should be litigated or arbitrated.").

In light of these considerations, the Court is satisfied that granting a stay will conserve judicial resources that would otherwise be unnecessarily expended challenging pleadings and litigating class certification issues. Indeed, it would prove to be "an extraordinary waste of time and money" to continue litigating this case "only to have to do it all again because the experts, the parties and the Court were proceeding under a legal framework that the [Supreme Court] determined did not apply." *Meijer, Inc. v. Abbott Labs.*, No. C 07-5985 CW, 2009 WL 723882, at *4 (N.D. Cal. Mar. 18, 2009).

On a final note, the Court is well-aware that courts in this district have gone both ways on the issue. However, the cases cited to by Plaintiff involved different circumstances than those present here. In *Daugherty v. SolarCity Corp.*, No. C 16-05155 WHA, 2017 WL 386253 (N.D. Cal. Jan 26, 2017), and *Coppernoll v. Hamcor, Inc.*, No. C 16-05936 WHA, 2017 WL 446315 (N.D. Cal. Jan. 17, 2017), the courts denied motions to stay that were issued over a year earlier than the date of this Order and when the timing of the decision in *Morris* was much more uncertain. In contrast, the Court is presently more persuaded by decisions that have "granted stays citing the timing of *Morris* as relevant to the hardship faced by defendants." *Guerrero v. Halliburton Energy Servs. Inc.*, 1:16-cv-1300-LJO-JLT, 2017 WL 3116672, at *7 (E.D. Cal. July 21, 2017).[4] As to Plaintiff's use of *Rivera v. Saul Chevrolet, Inc.*, No. 16-cv-05966-LHK, 2017 WL 1862509 (N.D. Cal. May 9, 2017), the Court notes that this case is currently on appeal.

Consequently, because all three of the *Landis* factors weigh in favor of granting a

---

[4] Plaintiff argues that it is "unclear whether the Court can elect not to adhere to Ninth Circuit authority merely because an appeal is pending." (Doc. No. 14 at 14.) Though the Court will not explicitly analyze this argument, as already delineated in this Order, courts have granted stays despite the Ninth Circuit precedent on the issue. *See Campanelli v. ImageFirst Healthcare Laundry Specialists, Inc.*, No. 15-cv-04456-PJH, 2017 WL 2929450, at *4 (N.D. Cal. July 10, 2017) (holding that a stay was warranted as it would be "inefficient to proceed to the certification stage" without the Supreme Court's holding in *Morris*).

13

stay, the Court concludes that a stay of proceedings pending the Supreme Court's resolution of *Morris* is warranted. *See Rodriguez v. Jerome's Furniture Warehouse*, No. 3:17-cv-00460-L-NLS, 2017 WL 3131845, at *4 (S.D. Cal. July 24, 2017).

## **CONCLUSION**

As the arbitration agreement at issue was purportedly imposed on Plaintiff as a condition of his employment, the Supreme Court's decision in *Morris* will have a direct impact on the issues before the Court. Consequently, the Court **GRANTS** Defendant's motion to stay.

All litigation is hereby stayed until further order from this Court. Defendant's pending motion to compel arbitration is **TERMINATED WITHOUT PREJUDICE** so that Defendant may re-notice this motion, if applicable, after the *Morris* decision is published. Further, the parties are ordered to jointly notify the Court within five days of the Supreme Court's decision in *Morris*.

**IT IS SO ORDERED.**

Dated: May 11, 2018

Hon. Anthony J. Battaglia
United States District Judge